IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| RAMON MENDOZA,<br><br>    Plaintiff,<br><br>  v.<br><br>JUSTIN OSTERBERG, individually; JOHN DOES #1-5, individually; SARPY COUNTY, NEBRASKA; SHERIFF JEFF DAVIS, and JOHN DOES #6–10,<br><br>    Defendants. | **8:13CV65**<br><br>**MEMORANDUM AND ORDER** |

   This matter is before the court on defendant Justin Osterberg's motion to dismiss for failure to state a claim or alternative motion for summary judgment, Filing No. 60, defendant Osterberg's motion to strike, Filing No. 82, and the plaintiff's Fed. R. Civ. P. 56(d) motion to defer consideration and to conduct discovery. Filing No. 73. This is an action for deprivation of civil rights and conspiracy under 42 U.S.C. § 1983 and 1985(3) against federal and state defendants; and for state law tort claims against the state defendants under Neb. Rev. Stat. § 13-901 *et seq.* See *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971). The plaintiff is a citizen of the United States who alleges he was arrested on misdemeanor charges and unlawfully detained by federal and state officials. Defendant Justin Osterberg is an employee of United States Immigration and Customs Enforcement ("ICE") and John Does #1-5 are also alleged to be ICE employees.[1]

---

[1] Individual John Does #1-5 are not named or identified at this time and have not been served. Defendant Osterberg states, however, that the same arguments advanced on behalf of defendant Osterberg would apply with equal force to claims against the John Does.

I.   Motions to Defer, Conduct Discovery and Strike

Osterberg has submitted documentary evidence in support of his alternative motion for summary judgment.  Filing No. 61, Index of Evid.  In response thereto, and in support of his motion to defer ruling to conduct discovery, the plaintiff has also submitted evidence.  Filing No. 75, Index of Evid; Filing No. 73, Motion to defer. Osterberg moves to strike the plaintiff's purported evidence, arguing that it is improper and is not authenticated.  Filing No. 82, Motion to Strike.  On defendant Osterberg's motion, this court earlier stayed discovery pending resolution of the pending motion to dismiss or alternatively for summary judgment.  Filing No. 63, Motion to Extend Rule 26(F) Report and Stay Discovery; Filing No. 64, Order.

In light of the fact that no discovery has been undertaken, the court finds it is not appropriate to consider defendant Osterberg's motion for summary judgment at this time.  Accordingly, the court will not consider the materials submitted in connection with the motion for summary judgment.  This finding renders the defendant's motion to strike the plaintiff's evidence moot.  The plaintiff's Rule 56(d) motion to conduct discovery is also rendered moot.  The court will consider the defendant's motion to dismiss.

II.   Defendant's Motion to Dismiss

A.   Facts

In his amended complaint, the plaintiff generally alleges that he was unlawfully detained for three days based on an improper immigration detainer issued on March 5, 2010, and withdrawn on March 8, 2010.  He alleges he was detained at the Sarpy County jail without any lawful basis and was not allowed to post bond to effectuate his release.  He further states he has complied with the requirements of the Nebraska

Political Subdivisions Tort Claims Act, Neb. Rev. Stat. § 13-901 *et seq.*, and the Federal Tort Claims Act, 28 U.S.C.A. § 2680 *et seq.*, in bringing this claim.

The plaintiff alleges in his amended complaint that he was wrongfully held on an erroneous immigration detainer, which ICE issues to advise other law enforcement agencies that ICE seeks custody of an alien not legally in the United States.   He contends that the federal defendants refused to admit his wife, Laura Mendoza, to the jail facility and refused to review the citizenship documents she had brought to secure his release.   He alleges he was released from the Sarpy County jail around 4 p.m. on March 8, 2010, and was treated for dehydration and emotional distress at a hospital emergency room.   He further alleges that as a proximate result of his detention, he became increasingly distressed and despondent and on March 8, 2010, he cut one of his wrists with the thought of ending his life.   He alleges violations of his rights under the Fourth, Fifth, Eighth, Ninth and Fourteenth Amendments to the Constitution.[2]   Filing No. 46, Amended Complaint.

Osterberg moves to dismiss on grounds of qualified immunity and failure to state a claim.   He first argues that special factors preclude *Bivens* claims in the context of immigration detention.   He next contends that, even if the claim is permissible, the plaintiff fails to allege that defendant Osterberg violated any of the plaintiff's clearly established constitutional rights when he issued the detainer.   Additionally, he argues that the plaintiff's conspiracy claim under 42 U.S.C. § 1985(3) should be dismissed because the plaintiff has failed to plead facts showing a conspiracy existed.

---

[2] Specifically, he alleges the defendants deprived him of his right to be free from unreasonable seizure of his person and property; deprived him of his liberty and his right not to be detained without a lawful basis; denied him his right to substantive and procedural due process of law; denied him equal protection under the law; and deprived him of his rights to counsel, to be free from the use of excessive force, and to be allowed to timely post bail for misdemeanor charges.   Filing No. 46, Complaint at 2.

B.   Law

Under the Federal Rules, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The rules require a "'showing,' rather than a blanket assertion, of entitlement to relief." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 n.3. (2007) (quoting Fed. R. Civ. P. 8(a)(2)). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Twombly*, 550 U.S. at 555). In order to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the plaintiff's obligation to provide the grounds for his entitlement to relief necessitates that the complaint contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

"On the assumption that all the allegations in the complaint are true (even if doubtful in fact)," the allegations in the complaint must "raise a right to relief above the speculative level." *Id.* at 555-56. In other words, the complaint must plead "enough facts to state a claim for relief that is plausible on its face." *Id.* at 547. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Determining whether a complaint states a plausible claim for relief is "a context-specific task" that requires the court "to draw on its judicial experience and common sense." *Id.* at 679. Accordingly, a court considering a motion to dismiss may begin by identifying pleadings that, because they are no more than conclusions, are not entitled

to the assumption of truth.  *Id.*  Although legal conclusions "can provide the framework of a complaint, they must be supported by factual allegations."  *Id.*  When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.  *Id.*  When the allegations in a complaint, however true, could not raise a claim of entitlement to relief, the complaint should be dismissed for failure to set a claim under Fed. R. Civ. P. 12(b)(6).  *Twombly*, 550 U.S. at 558; *Iqbal*, 556 U.S. at 679; *see West-Anderson v. Missouri Gaming Co.*, 557 Fed. App'x 620, 623 (8th Cir. 2014) (noting that *Twombly* and *Iqbal* did not abrogate notice pleading standard of Fed. R. Civ. P. 8(a)(2) and that determining whether a plausible inference will prove to be correct is not an issue to be determined by a motion to dismiss).

A *Bivens* claim is the "federal analog to suits brought against state officials under . . . 42 U.S.C. § 1983."  *Iqbal*, 556 U.S. at 675-76 (2009) (quoting *Hartman v. Moore*, 547 U.S. 250, 254, n. 2 (2006)).  The factors necessary to establish a *Bivens* violation will vary with the constitutional provision at issue.  *Iqbal*, 556 U.S. at 676.  In *Bivens*, the Supreme Court recognized an implied private right of action for damages against federal officials for violating a person's Fourth Amendment rights.  *Bivens*, 403 U.S. 388, 390-92 (1971) (involving unreasonable search and seizure).  In the years following *Bivens*, the Supreme Court "recognized two more nonstatutory damages remedies, the first for employment discrimination in violation of the Due Process Clause, and the second for an Eighth Amendment violation by prison officials."  *Wilkie v. Robbins*, 551 U.S. 537, 549 (2007) (citations omitted) (declining to extend *Bivens* to a Fifth Amendment claim of unconstitutional interference with property rights).  The *Bivens*

remedy has not been extended to claims of First Amendment violations by federal employers, claims of harm to military personnel through activity incident to service, wrongful denials of Social Security disability benefits, claims against federal agencies, or claims against private prisons. *Wilkie*, 551 U.S. at 550; *see, e.g., Bush v. Lucas*, 462 U.S. 367, 378 (1983) (First Amendment); *Chappell v. Wallace*, 462 U.S. 296, 298-300 (1983) (military); *Schweiker v. Chilicky,* 487 U.S. 412, 414 (1988) (social security); *FDIC v. Meyer*, 510 U.S. 471, 484-486 (1994) (federal agencies); *Correctional Servs.Corp. v. Malesko*, 534 U.S. 61, 70-73 (2001) (privately-operated prisons).

When confronted with a *Bivens* claim, the court must first decide whether the case presents a "new context" in which *Bivens* might apply. *Hernandez v. United States,* — F.3d —, —, 2014 WL 2932598, *17 (5th Cir. June 30, 2014) (stating that the Supreme Court has adopted a context-specific approach in deciding whether to extend a *Bivens* action). "Instead of an amendment-by-amendment ratification of *Bivens* actions, [courts] are bound to examine each new context—that is, each new 'potentially recurring scenario that has similar legal and factual components.'" *Hernandez,* 2014 WL 2932598 at *17 (quoting *Arar v. Ashcroft*, 585 F.3d 559, 572 (2d Cir. 2009) (en banc)). In defining that context, the court should "describe a scenario neither too general, nor too specific." *Hernandez,* 2014 WL 2932598 at *18.

As noted, in *Bivens,* the Supreme Court held that the Fourth Amendment "implicitly authorized a court to order federal agents to pay damages to a person injured by the agents' violation of the [Fourth] Amendment's strictures." *Minneci v. Pollard*, 132 S. Ct. 617, 618 (2012). *Bivens* actions have been allowed for a Fifth Amendment due

process claim,[3] and for an Eighth Amendment claim based on federal government officials' deliberate indifference to a federal prisoner's serious medical needs. *Id.* at 618-19; *see also Martinez-Aguero v. Gonzalez*, 459 F.3d 618, 625 (5th Cir. 2006) (allowing a *Bivens* action by a noncitizen against Border Patrol agents for false arrest and excessive force under the Fourth Amendment); *Engel v. Buchan*, 710 F.3d 698, 708 (7th Cir. 2013) (authorizing a *Bivens* claim under the Fourth Amendment for a *Brady* violation); *Keil v. Triveline*, 661 F.3d 981, 985 (8th Cir. 2011) (involving a *Bivens* claim for wrongful arrest and detention under the Fourth and Fifth Amendments).

If the case appears to present a new context, courts then follow a familiar two-step sequence to decide whether to extend *Bivens* into that new context. *Wilkie*, 551 U.S. at 550. Courts first ask "whether any alternative, existing process for protecting the constitutionally recognized interest amounts to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages." *Minneci,* 132 S. Ct. at 621 (quoting *Wilkie*, 551 U.S. at 550) (alterations and internal quotation marks omitted) (finding a federal inmate has no *Bivens* claims against private employees working at a privately-operated federal prison for denial of medical care or similar conduct that typically falls within the scope of traditional state tort law). "'When the design of a Government program suggests that Congress has provided what it considers adequate remedial mechanisms for constitutional violations that may occur in the course of its administration, [the Supreme Court has] not created additional *Bivens* remedies.'" *Hardison v. Cohen*, 375 F.3d 1262, 1264 (11th Cir. 2004) (quoting

---

[3] The Court found a damages action implicit in the Fifth Amendment's Due Process Clause, which forbids the federal government to deny equal protection of the laws, in the context of federal employment gender discrimination. *Davis v. Passman*, 442 U.S. 228, 234 (1979). However, the Court declined to recognize a *Bivens* action under the Fifth Amendment for a landowner against federal land management agents accused of harassment. *Wilkie*, 551 U.S. at 562.

*Schweiker*, 487 U.S. at 423).   An alternative remedy, however, must be "clearly constitutionally adequate" for it to preclude additional remedies under *Bivens*.  *Bush*, 462 U.S. at 378 n.14.

Congress enacted the Immigration and Nationality Act ("INA") as a comprehensive scheme to regulate "'immigration and naturalization' and set 'the terms and conditions of admission to the country and the subsequent treatment of aliens lawfully in the country.'" *Chamber of Commerce v. Whiting*, — U.S. —, 131 S. Ct. 1968, 1973 (2011) (quoting *DeCanas v. Bica*, 424 U.S. 351, 353 (1976)).  The INA provides an administrative process for the deportation and immigration of aliens who are not constitutionally or statutorily permitted to remain in the United States. *See, e.g.*, 8 U.S.C. § 1103(a)(1).   "Congress has not made it clear through its regulation of immigration that it intends for persons injured by Border Patrol agents—be they citizens or not—to lack a damages remedy for unconstitutional uses of force." *Hernandez*, 2014 WL at 2932598 at *19.  Whether an immigrant may bring a *Bivens* claim to vindicate certain constitutional rights is a separate issue from whether a citizen may bring such a *Bivens* claim. *Mirmehdi v. United States*, 689 F.3d 975, 981 n.3 (9th Cir. 2012) (noting that, in the exercise of its broad power over immigration and naturalization, Congress regularly makes rules that would be unacceptable if applied to citizens); *Arar v. Ashcroft*, 585 F.3d at 573-74 (stating that it was difficult in the context presented to determine if the INA provided an alternative remedial scheme, but declining to extend *Bivens* to the context of extraordinary rendition of an alien because of special factors counseling hesitation); *Papa v. United States*, 281 F.3d 1004, 1011 (9th Cir. 2002) (holding that dismissal of an alien's *Bivens* claims for unreasonable search and seizure

and discrimination upon entry was proper because "[a]liens are not afforded due process protections when they seek admission to the United States.").

Even in the absence of an alternative remedy, courts next ask whether, in the court's judgment, "special factors" counsel hesitation "in the absence of affirmative action by Congress." *Bivens*, 403 U.S. at 396; *see also Minneci*, 132 S. Ct. at 621; *Hernandez*, 2014 WL 2932598 at *18. The Supreme Court and Circuit Courts have identified a handful of such "special factors." *See Arar*, 585 F.3d at 559 (describing "special factors" as "an embracing category, not easily defined"). One class of special factors focuses on Congress's express or implied "concerns about judicial intrusion into the sensitive work of specific classes of federal defendants." *Engel v. Buchan*, 710 F.3d at 707. Courts have especially emphasized the "judicial intrusion" rationale in military contexts. *Hernandez* at *20; *See United States v. Stanley*, 483 U.S. 669, 683-84 (1987) (no *Bivens* action for injuries arising out of or in the course of activity incident to military service); *Chappell v. Wallace*, 462 U.S. at 300 (holding that "necessarily unique structure of the military" is a special factor counseling against providing *Bivens* remedy); *Lebron v. Rumsfeld*, 670 F.3d 540, 548 (4th Cir. 2012) (holding that constitutional separation of powers and lack of judicial competence counsel hesitation in implying *Bivens* action for enemy combatants held in military detention); *Vance v. Rumsfeld*, 701 F.3d 193, 200 (7th Cir. 2012) (en banc); *Ali v. Rumsfeld*, 649 F.3d 762, 773 (D.C. Cir. 2011). The reasoning underlying "judicial intrusion" cases has also been applied in the context of immigration-related actions by aliens not lawfully in the United States. *Mirmehdi v. United States*, 689 F.3d at 982 (declining to recognize a *Bivens* remedy for claimed constitutional violations in the immigration context in light of the availability of

habeas corpus as one component of a comprehensive adjudicative and remedial process). Another species of special factor is the workability of the cause of action. *See Wilkie*, 551 U.S. at 555 (doctrinal workability of cause of action).

The doctrine of qualified immunity operates the same under both § 1983 and *Bivens*. *Hernandez*, 2014 WL 2932598 at *5. "Qualified immunity 'gives government officials breathing room to make reasonable but mistaken judgments about open legal questions.'" *Lane v. Franks*, 134 S. Ct. 2369, 2381 (2014) (quoting *Ashcroft v. al-Kidd*, 563 U.S. —, —, 131 S. Ct. 2074, 2085 (2011)). "Under this doctrine, courts may not award damages against a government official in his personal capacity unless 'the official violated a statutory or constitutional right,' and 'the right was clearly established at the time of the challenged conduct.'" *Lane*, 134 S. Ct. at 2369.

When an official properly and timely files a motion for dismissal or for summary judgment asserting qualified immunity, the official is entitled to a ruling on the issue of qualified immunity. *Payne v. Britten*, 749 F.3d 697, 702 (8th Cir. 2014). As such, the district court must issue a reviewable ruling—either granting or denying qualified immunity—before requiring the officials to progress further in litigation at the district court. *Id.* at 699. "Courts may ask only whether the facts as alleged plausibly state a claim and whether that claim asserts a violation of a clearly established right." *Id.* at 702; *Keil v. Triveline*, 661 F.3d at 985 ("[t]o determine whether the agents are entitled to qualified immunity, we consider (1) whether the facts alleged, construed in the light most favorable to [the plaintiff], establish a violation of a constitutional or statutory right, and (2) whether that right was clearly established at the time of the alleged violation, such that a reasonable official would have known that her actions were unlawful"). A

plaintiff bringing a *Bivens* action "must plead that each Government official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

"The Fourth Amendment applies to all seizures of the person, including seizures that involve only a brief detention short of traditional arrest." *United States v. Brignoni-Ponce*, 422 U.S. 873, 878 (1975). Seizures of the person must be either based on a warrant or supported by probable cause to believe that the person has committed the violation in question. *Ker v. California*, 374 U.S. 23, 34-35 (1963). An arrest does not violate the Fourth Amendment if it was supported by probable cause. *Keil*, 661 F.3d at 985. Officers may also be entitled to qualified immunity if they arrest a suspect under the mistaken belief that they have probable cause to do so, provided that the mistake is objectively reasonable. *Id.* "The issue, therefore, is whether the agents had 'arguable probable cause' to arrest and detain [the plaintiff]." *Id.* The officers may be mistaken as to the existence of probable cause, but the mistake must be "objectively reasonable." *Id.* Objective reasonableness depends on "the totality of the circumstances." *Clayborn v. Struebing*, 734 F.3d 807, 809 (8th Cir. 2013).

"[I]n order to issue a detainer . . . there must be probable cause to believe that the subject of the detainer is (1) an alien who (2) may not have been lawfully admitted to the United States or (3) otherwise is not lawfully present in the United States." *Galarza v. Szalczyk*, Civ. A. No. 10–CV–06815, 2012 WL 1080020, at *13 (E.D. Pa. Mar. 30, 2012) (quoting 8 U.S.C.A. § 1357(d)(1)); *Morales v. Chadbourne*, — F. Supp. 2d —, 2014 WL 554478 (D.R.I. 2014). Under federal law, "[a]ny officer or employee of the Service authorized under regulations prescribed by the Attorney General shall have

power without warrant . . . to interrogate any alien or person believed to be an alien as to his right to be or to remain in the United States." 8 U.S.C. § 1357(a)(1). Immigration officers also have authority to arrest without a warrant "any alien . . . if he has reason to believe that the alien so arrested is in the United States in violation of any [immigration] law or regulation and is likely to escape before a warrant can be obtained for his arrest." 8 U.S.C. § 1357(a)(2); *see also Babula v. Immigration and Naturalization Serv.,* 665 F.2d 293, 298 (3d Cir. 1981).

The Fourth Amendment forbids stopping or detaining persons for questioning about their citizenship on less than a reasonable suspicion that they may be aliens. *See Brignoni-Ponce*, 422 U.S. at 883-84 (noting that the congressional power to admit aliens on condition that they submit to reasonable questioning about their right to be or remain in the country "cannot diminish the Fourth Amendment rights of citizens who may be mistaken for aliens"). Once, however, the officer has objective facts that give him or her cause to doubt the person's immigration status, such as record checks, tips, the individual's actions, facts from the broader context in which events are transpiring, or an officer's expertise in travel and immigration patterns, the officer has reasonable suspicion and can detain and question the individual about his or her immigration status under Section 1357(a)(1). *See, e.g., United States v. Cortez*, 449 U.S. 411, 418 (1981); *Babula,* 665 F.2d at 296.

ICE officers do not have the authority to detain or deport U.S. citizens. *Lyttle v. United States*, 867 F. Supp. 2d 1256, 1281 (M.D. Ga. 2012). It is also "clearly established that [a seizure] without arguable probable cause to believe that [an individual] was an alien in the United States illegally violate[s] the Fourth Amendment."

*Id.* at 1281 (stating that "an ICE officer who actively participates in the detention and/or removal of a person who he knows to be a U.S. citizen, or upon minimal investigation would discover is a U.S. citizen, would be deemed to know that such conduct clearly denies that person liberty without due process of law.")  Consequently, any such officer would not be protected by qualified immunity."  *Id.* at 1284.

To state a claim under 42 U.S.C. §§ 1985(2) or (3), a plaintiff must allege four things: (1) a conspiracy; (2) motivated by a racial or class-based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons of the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to person or property or the deprivation of any right or privilege of a citizen of the United States.  *See Griffin v. Breckenridge*, 403 U.S. 88, 102–03 (1971).

A seizure that is justified can become unlawful if it is prolonged beyond the time reasonably required to complete that mission.  *Arizona v. United States*, — U.S. —, 132 S. Ct. 2492, 2509 (2012) (noting that "[d]etaining individuals solely to verify their immigration status would raise constitutional concerns.")  An investigatory detention may become an unreasonable seizure under the Fourth Amendment if it lasts too long. *See Illinois v. Caballes*, 543 U.S. 405, 407 (2005).

III.  DISCUSSION

Although the plaintiff characterizes his claims as encompassing his rights under the Fourth, Fifth, Eighth, Ninth and Fourteenth Amendments, he only asserts claims against the federal defendant or defendants for wrongful seizure and detention under the Fourth Amendment and conspiracy to deprive of him of equal protection and liberty rights under the Fifth Amendment.  Neither of those claims presents a new context in

which *Bivens* might apply.  *Bivens* claims have been recognized for false arrest and equal protection claims.  The issue under the Fourth Amendment is whether defendant Osterberg had arguable probable cause to seek an ICE detainer on plaintiff on March 5, 2010.  The issue under the Fifth Amendment is whether the plaintiff has alleged unfair treatment on the basis of race.  At this stage of the litigation, the court finds the plaintiff has adequately asserted a *Bivens* claim for Fourth Amendment violations as well as a plausible claim for conspiracy to deprive him of his Fifth Amendment equal protection and liberty rights under 42 U.S.C. § 1985(3).

Further, the court finds that no special factors caution against the *Bivens* remedy. Importantly, this is an action by a United States citizen so the impact of a pervasive and comprehensive immigration law system is not at issue.  Although the INA may be a comprehensive system for adjudication of immigration rights, it does not provide an avenue of redress to a United States citizen.  The defendant's reliance on caselaw and argument involving noncitizens is misplaced.  Those cases do not apply to United States citizens who are wrongfully detained because the procedures of the immigration system lack sufficient constitutional safeguards for United States citizens.

At this stage of the proceedings, it does not appear that the plaintiff has an alternative remedy available to him.  He is not an alien who could avail himself of the comprehensive statutory scheme of the INA.   The government's arguments that Congress's plenary power over immigration provides such a "special factor" is simply inapplicable to the plaintiff's situation since he is a citizen, not an alien.

Further, it is not clear at this stage of the proceedings that Osterberg is entitled to qualified immunity.  The court finds the defendant's motion to dismiss on the ground of

qualified immunity should be denied at this time without prejudice to reassertion.  The plaintiff's rights to be free from unlawful seizure and from racial discrimination were clearly established at the time of the incident.  The plaintiff alleges that Osterberg did not have arguable probable cause to detain him and conspired and agreed with state officials to "racially profile" him.  The court cannot conclude on the face of the pleadings that defendant Osterberg is immune from suit by reason of qualified immunity.  The circumstances surrounding the unlawful detention claim require further factual development in discovery.

Taking the facts in the light most favorable to the plaintiff, as must be done at this stage, the five-day detention appears to be unauthorized.  The plaintiff has sufficiently alleged he was subjected to a prolonged detention in violation of his rights.  The plaintiff's amended complaint contains more than are more than conclusory allegations and "formulaic recitation of the elements."  Accordingly,

IT IS HEREBY ORDERED:

1.     The plaintiff's motion to defer ruling (Filing No. 73) is granted with respect to the motion for summary judgment and denied with respect to the motion to dismiss.

2.     Defendant Osterberg's motion to strike (Filing No. 82) is denied as moot.

3.     Defendant Osterberg's motion for summary judgment (Filing No. 60) is denied as premature, without prejudice to refiling.

4.     Defendant Osterberg's motion to dismiss (Filing No. 60) is denied.

5.    The parties shall have twenty-one (21) days from the date of this order in which to file a planning report with the court pursuant to Federal Rule of Civil Procedure 26(f).

Dated this 31st day of July, 2014.

BY THE COURT:


s/ Joseph F. Bataillon
United States District Judge

16